**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2014 MAY 20  AM 10: 59

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
    DEPUTY

JOANN WELLINGTON,

        **Plaintiff,**

-vs-                                                           **Case No.  A-13-CA-077-SS**

TEXAS GUARANTEED, SHEILA DUNLAP,
COURTNEY ROBERTSON, SAMANTHA
HAYNES, JOYCE COLEMAN,
        **Defendants.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion for Judgment on the Pleadings [#28], to which Plaintiff Joann Wellington has not responded.  Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders.

### Background

Plaintiff Joann Wellington filed this pro se lawsuit against a number of her former co-workers, her former supervisor, and her former employer, asserting claims under Title VII of the Civil Rights Act and the Americans with Disabilities Act (ADA).  Wellington used to work for Defendant Texas Guaranteed Student Loan Corporation (TG), which is a non-profit corporation that offers resources to help students and families plan and prepare for college, repay their student federal loans, and administer Federal Family Education Loan Program loans on behalf of the U.S. Department of Education. According to TG, Wellington worked for the corporation from November 2003 until July 9, 2012, when TG terminated her employment.

On November 16, 2012, Wellington filed a Charge of Discrimination against TG with the Texas Work Force Commission Civil Rights Division and the Equal Employment Opportunity Commission (EEOC), claiming she was subject to a continuous hostile work environment from around July 1, 2012, until July 9, 2012. Wellington alleged the "main participants/instigators in the harassment [were]: Sheila Dunlap (Black) Assistant Vice President, Samantha Haynes (Black) Team Leader, Joyce Coleman, Carolyn Daniels, Courtney Robertson, Tracy Morgan, Tsinina Barbados, Ileana Santana, and Leslie Rodriguez." Defs.' Mot. J. Pleadings [#28-1], Ex. A (EEOC Charge). Wellington asserts these individuals made her "job and work environment difficult on a daily basis simply because [she] refused to be one of the girls and because [she] was selected for the Contract Support Rep position." *Id.* Wellington claims Haynes targeted her specifically because she refused to be on Haynes's "team," and Haynes allowed her team "to shout verbal abusive language; derogatory comments about [Wellington's] perfume and [Wellington] had personal items removed from her desk." *Id.* Wellington alleges she filed a complaint in April of 2012 with Greg Dickerson from the legal department, and Dickerson conducted an investigation. *Id.* Apparently, Dickerson found "no proof" to Wellington's claims, and Dickerson told Wellington to keep him informed. *Id.* Finally, Wellington states Dickerson told her that her job would not be in jeopardy. *Id.*

Based on these factual allegations, Wellington checked the boxes on her EEOC charge for discrimination based on race, color, disability, and retaliation. *Id.* She did not identify her race, color, or disability. *Id.* The EEOC issued a "Dismissal and Notice of Rights" with respect to Wellington's claims on November 21, 2012. *See* Defs.' Mot. J. Pleadings [#28-2], Ex. B (Dismissal and Notice of Rights). The EEOC concluded that based on its investigation: (1) the alleged facts in the charge failed to state a claim under any of the statutes enforced by the EEOC; (2) the allegations

did not involve a disability as defined by the ADA; and (3) the EEOC was unable to conclude that the information obtained established violations of Title VII or the ADA. *Id.*

On January 29, 2013, Wellington filed her pro se Original Complaint with this Court, naming TG and four TG employees as defendants. On August 20, 2013, she filed an Amended Complaint after retaining counsel.[1] In short, Wellington claims: (1) she was discriminated against because she is black in violation of Title VII; (2) she was discriminated against because she is obese in violation of the ADA; and (3) she was retaliated against in violation of Title VII and the ADA because she complained to the legal department about the race and disability discrimination, and was fired soon thereafter.

On April 15, 2014, Defendants, who have all answered and asserted as an affirmative defense that the Amended Complaint fails to state a claim upon which relief can be granted, now bring a Motion for Judgment on the Pleadings. Wellington has yet to respond to this motion, and the Court also notes the deadline for filing amended pleadings was April 30, 2014. *See* Scheduling Order [#20]. The Court now addresses Defendants' motion.

## Analysis

As an initial matter, the Court grants Defendants' motion as unopposed. *See* Local Rule CV-7(e)(2). Nevertheless, the Court addresses the merits of the motion.

## I.     Rule 12(c)—Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).

---

[1] Wellington's counsel has since withdrawn from the case, and she is proceeding pro se once again. *See* Order of Mar. 13, 2014 [#26].

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5thc Cir. 2009).

A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*  Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.  In deciding a motion to dismiss, courts may  consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

-4-

When deciding a motion to dismiss, the Court may only consider matters included in the pleadings. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). These matters include documents attached to the complaint, as well as documents "attached to [the] motion to dismiss, . . . referred to in the complaints, and . . . central to the plaintiffs' claims." *Id.* (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)). In addition, the Court may take judicial notice of public records. *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Prewitt v. Continental Automotive*, 927 F. Supp. 2d 435, 447 (W.D. Tex. 2013) (in deciding motion to dismiss, "a court may take judicial notice of EEOC documents as a matter of public record").

In this case, Wellington references her EEOC Charge and the Dismissal and Notice of Rights in her Amended Complaint. *See* Am. Compl. [#19], ¶¶ 11–12. Wellington attached the Notice and Dismissal of Rights to her Original Complaint, and Defendants attached both of these documents to their Motion for Judgment on the Pleadings. Both documents are central to Wellington's claims because she can only assert claims that were properly exhausted in the EEOC Charge, and she must be issued the Notice of Dismissal of Rights before she can file her Title VII and ADA claims in federal court. Accordingly, the Court may consider these documents in deciding the instant motion.

## II.    Application

### A.    Wellington's Claims against the Individual Defendants

Wellington sues Sheila Dunlap, Samantha Haynes, Courtney Robertson, and Joyce Coleman. All four were allegedly her co-workers, and Dunlap was her direct supervisor. Wellington asserts both Title VII and ADA claims against these Defendants. These statutes, however, only create

causes of action against an "employer," and none of these individuals were Wellington's "employer." Consequently, the claims must be dismissed.

Title VII makes it unlawful for an "employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In order for a defendant to be subject to liability under Title VII, there must be an employment relationship between the plaintiff and the defendant. *See Deal v. State Farm Cnty. Mut. Ins. Co.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993) (citing *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990)). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ., and any agent of such person." 42 U.S.C. § 2000e(b). Similarly, the ADA prohibits a "covered entity" from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "covered entity" is an "employer," and the definition of "employer" is the same under Title VII and the ADA. *See* 42 U.S.C. §§ 12111(2), 12111(5)(A).

The Fifth Circuit has repeatedly held Title VII creates a cause of action against an employer and cannot be used to impose liability on an employee or a supervisor in his individual capacity. *See Provensal v. Gaspard*, 524 F. App'x 974, 977 (5th Cir. 2013) (unpublished) (affirming dismissal of plaintiff's claims against another employee because the defendant "could not be sued in his individual capacity under Title VII") (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994) (holding that plaintiff could not bring a Title VII claim against his supervisor, even though that supervisor had "authority to hire, fire, and discipline" the plaintiff, because the statute "does not permit the imposition of liability upon individuals")).

In addition, a plaintiff cannot assert a Title VII claim against both her employer and an employee or supervisor in his *official* capacity because this could result in the employer being held liable for the same conduct twice. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (citing *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985)). Wellington's Title VII claims against the four individual defendants—which are essentially identical to her claims against TG—must therefore be dismissed for failure to state a claim upon which relief can be granted. *See, e.g., Evans v. Greuschow*, 314 F. App'x 716, 718 (5th Cir. 2009) (affirming district court's dismissal of plaintiff's Title VII claims against his supervisor under Rule 12(b)(6) because the statute cannot be used to impose individual liability); *Muthukumar v. Kiel*, 478 F. App'x 156, 158 (5th Cir. 2012) (unpublished) (same); *Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) (unpublished) ("'[R]elief under Title VII is only available against an employer, not an individual supervisor or fellow employee.'") (quoting *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003)).

Wellington's ADA claims against the individual defendants must be dismissed for the same reasons as her Title VII claims because the ADA definition of "employer" is identical to Title VII's. While the Fifth Circuit has not expressly addressed whether the ADA can be used to impose individual liability on an employee or supervisor, district courts in this Circuit as well as other circuit courts have consistently concluded an employee or supervisor cannot be held individually liable under the ADA due to the ADA's similarities to Title VII. *See, e.g., Fodor v. D'Isernia*, 506 F. App'x 965, 966 (11th Cir. 2013) (unpublished) (discussing *Albra v. Advan, Inc.*, 490 F.3d 826, 829–30 (11th Cir. 2007)); *U.S. E.E.O.C. v. AIC Sec. Investigations*, 55 F.3d 1276, 1280, 1282 (7th Cir. 1995) (noting "[c]ourts routinely apply arguments regarding individual liability to [the two]

statutes interchangeably"); *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 703–04 (E.D. La. 2013);

*Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 850 (S.D. Tex. 2010) (citing *Jenkins v. Bd. of Educ. of Hous. Indep. Sch. Dist.*, 937 F. Supp. 608, 612–13 (S.D. Tex. 1996); *Miller v. Giglio Distrib. Co.*, 899 F. Supp. 318, 319 (E.D. Tex. 1995)); *Rodriguez v. Corvel Corp.*, No. SA-99-CA-1339 HG, 2001 WL 685734, at *5 (W.D. Tex. Mar. 29, 2001).

Therefore, the Court GRANTS Defendants' motion with respect to Wellington's claims against the individual Defendants.

**B.      Wellington's Claims against TG**

**1.      Race and Disability Discrimination Claims**

Before an individual can pursue a Title VII claim in federal court, she must first exhaust her available administrative remedies. *See Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). Exhaustion occurs when an individual files a timely complaint with the EEOC, her claim is dismissed by that agency, and the agency informs her of her right to sue in federal court. 42 U.S.C. § 2000e–5(f)(1). The scope of the exhaustion requirement has been defined with two competing Title VII policies in mind. "On the one hand, because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970)). At the same time, "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* (citing *Sanchez*, 431 F.2d at 466). Balancing these policies, courts "interpret[] what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the

administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Sanchez*, 431 F.2d at 466).

The exhaustion requirement and exhaustion analysis of *Pacheco* have been similarly applied in the ADA context. *See, e.g.*, *Hamar v. Ashland, Inc.*, 211 F. App'x 309, 310 (5th Cir. 2006) (unpublished) (holding an EEOC charge that only presents allegations in support of a disparate treatment claim does not exhaust the plaintiff's administrative remedies for a failure-to-accommodate claim since those claims are based on different conduct); *Prewitt*, 927 F. Supp. 2d at 450–52; *Huff v. DRE Mgmt., Inc.*, No. 3:12-CV-0414-B, 2012 WL 3072389, at *3–5 (N.D. Tex. July 30, 2012).

While Wellington checked the boxes for race, color, retaliation, and disability on her EEOC Charge, none of the facts alleged in her narrative relate to these forms of discrimination. Wellington claims she was mistreated and subject to a hostile, discriminatory work environment for the following reasons: (1) Wellington "refused to be one of the girls;" (2) Wellington was selected for a promotion; (3) Wellington refused to be on Defendant Haynes "team;" (4) Wellington's co-workers shouted abusive language at her; (5) Wellington's co-workers made derogatory comments about her perfume; and (6) Wellington's co-workers removed personal items from her desk. Wellington fails to connect these alleged events to any sort of race or disability discrimination. In fact, she does not even identify her race or her disability.

In her Amended Complaint, Wellington explains she was targeted because she was African-American and obese. An investigation based on the EEOC Charge, however, could not reasonably be expected to include an investigation into discrimination based on these traits, even when liberally construed. The only mention of race in the narrative of the EEOC Charge is the allegation two of

the individuals who were harassing Wellington were black, and there is no mention or even implied reference to Wellington's supposedly obese condition. Instead of describing race or disability discrimination, Wellington describes harassment based on non-discriminatory motives unrelated to being black or obese.

Furthermore, the specific allegations of race discrimination raised by Wellington in her Amended Complaint are totally absent from her EEOC Charge. Beyond generally alleging race discrimination against all of the Defendants, Wellington describes the following specific instances of race-based harassment: (1) Haynes told Wellington at a pot luck lunch she was "too fat and black" to eat with the other employees; (2) Haynes told Wellington she could be as dark as Wellington if she tanned more often; and (3) Dunlap allowed other employees on her work team to refer to Wellington as a "fat ass nigga bitch." *See* Am. Compl. [#19], ¶¶ 19, 24. Nothing in the EEOC Charge would alert an investigator to these events. In fact, Wellington claims in her charge she was first discriminated against in July 2010, but the pot luck lunch where Haynes supposedly made her racial comment occurred allegedly in the summer of 2008.

Similarly, Wellington's allegations of discrimination motivated by her obesity in her Amended Complaint are totally unrelated to the claims in her EEOC Charge. In her Amended Complaint, Wellington describes the following specific instances of harassment related to her weight: (1) Haynes told Wellington at the pot luck lunch she was "too fat and black" to eat with other employees; (2) Haynes told Wellington at the pot luck lunch she had "too much food on her plate" and she should eat less so she could lose weight; (3) Haynes and another employee were passing out snacks to all the other employees at TG, but when they realized they did not have enough snacks for everyone, they took Wellington's snacks away from her stating she "did not need any

more snacks because of her weight;" (4) Dunlap allowed other employees on her work team to refer to Wellington as a "fat ass nigga bitch." *Id.*, ¶¶ 19–20, 24.  Again, there is not even a hint of these allegations in the EEOC Charge, and the pot luck lunch comments predate the time frame of discrimination alleged in the Charge.

Comparing Wellington's allegations in her EEOC Charge and those in her Amended Complaint, the Court concludes the scope of her EEOC Charge, including any investigation which could reasonably have been expected to grow out of the allegations in her Charge, does not encompass the allegations in her Amended Complaint.  In effect, she did not trigger the investigatory and conciliatory procedures of the EEOC, which would have helped achieve non-judicial resolution of the employment discrimination claims. Because Wellington has failed to exhaust her administrative remedies, her claims of race discrimination under Title VII and disability discrimination under the ADA against TG must be dismissed.

### 2.    Retaliation Claims

Under Title VII, retaliation occurs when a plaintiff engages in protected activity, such as reporting discrimination or perceived discrimination that violates the statute and suffers a causally related adverse employment consequence.  *Ackel v. Nat'l Commc'ns*, 339 F.3d 376, 385 (5th Cir. 2003).  Just as with her race and disability discrimination claims, Wellington's allegations in her EEOC Charge do not match those in her Amended Complaint.  In her EEOC Charge, after describing the various forms of harassment motivated by non-discriminatory motives, she claims she took her complaints to Greg Dickerson with TG's legal department in April 2012.  Dickerson concluded there was no proof to her claims, told Wellington to keep him advised, and assured her job was not in jeopardy.  In contrast, in her Amended Complaint, after describing various forms of discrimination

motivated by her race and her obesity, Wellington alleges she discussed her concerns with her manager, the Human Resources department, and the legal department. *See* Am. Compl. [#19], ¶ 41. According to Wellington, soon after voicing these concerns, she was terminated. *Id.*

Wellington's allegations in her EEOC Charge would not put an investigator on notice of the retaliation claim she asserts in her Amended Complaint. The discrimination she describes in her EEOC Charge is not the sort covered by Title VII or the ADA. Therefore, under these allegations, when she states she complained to Dickerson in the legal department, she was not engaged in a "protected activity" for purposes of Title VII and ADA retaliation claims. Moreover, Wellington does not even mention in her EEOC Charge, which was signed on November 16, 2012, that TG terminated her employment in July 2012, which would alert an EEOC investigator to the fact Wellington suffered an "adverse employment consequence" for purposes of her Title VII and ADA retaliation claims.

Because Wellington has failed to exhaust her administrative remedies, her retaliation claims against TG must be dismissed.

## Conclusion

Wellington has failed to state a claim against the individual Defendants because none of them were her "employer" for purposes of Title VII and the ADA. Furthermore, Wellington has not stated a claim against her employer, Texas Guaranteed, because she failed to exhaust her administrative remedies. Wellington originally filed this lawsuit in January 2013 and filed an amended complaint in August 2013. The deadline for filing amended pleadings—April 30, 2014—has passed, and Wellington has failed to even respond to the instant motion, which was filed April 15, 2014. Finally, the Court fails to see how Wellington could remedy the deficiencies in her pleadings by re-filing

-12-

given the individuals' statuses as non-employers and the failure to exhaust her remedies against her employer.  Therefore, the Court GRANTS the Defendants' Motion for Judgment on the Pleadings, and DISMISSES WITH PREJUDICE Wellington's claims against all Defendants.

Accordingly,

IT IS ORDERED that Defendants' Motion for Judgment on the Pleadings [#28] is GRANTED;

IT IS FINALLY ORDERED that Plaintiff Joann Wellington's claims against Defendants Texas Guarantee, Sheila Dunlap, Courtney Robertson, Samantha Haynes, and Joyce Coleman are DISMISSED WITH PREJUDICE.

SIGNED this the _20_ day of May 2014.

_Samsparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE